I cannot yield my assent to the opinion of a majority of the Court in this case.
I think we are disregarding the obvious meaning of the Legislature through a ceremonious respect to the words they have used.
In the exposition of all instruments the intention of the makers is the only guide. And as regards statutes, it is a very ancient rule to consider the old law, the mischief, and the remedy. And Lord Coke has ventured to assert that it is the office of judges always to make such construction as shall repress the mischief and advance the remedy, according to the true intent of the makers. Heydon's case, Co. Rep., and Sir E. Plowden, who is denominated by Lord Coke a grave and learned apprentice of the law. In a nota bene to the case of Eystonv. Studd, 2 Plow., 465, it is said, "that it is not the words of the law, but the internal sense of it, that makes the law; that the law (304) consists of two parts, a body and soul; that the letter is the body, the sense and reason the soul — qua ratio legis est anima legis;
and that the law may be resembled to a nut, which has a shell and kernel within; the letter representing the shell, the sense the kernel. And as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely only on the letter." AndChief Justice Brook, another venerable sage, in Hill v. Grange, reported by Plowden, in speaking of the construction of statutes, says "that when an act is made to remedy a mischief, that in order to aid things in the likedegree, one action may be used for another, one thing for another, and oneperson for another, notwithstanding that in some respects the thing is penal. As in the action of waste given by Stat. Glou. against termers foryears, by equity it is extended to him who *Page 235 
holds for a half year; so the Stat. of Westm. which gives an action against a jailer who lets out one committed for arrears of account, is extended to a case of commitment for debt. So the Stat. Wilm. which gives a cui vita
after coverture dissolved by death, extends to a case of divorce. So onething for another, as an elegit de mediatatum suae terrae, which is given by statute, yet it extends to a moiety of a rent. And in respect topersons, the Stat. 4 Ed. III., gives an action de bonis asportatis to executors, yet it is extended to administrators."
Servilely treading in the footsteps of these great fathers of the law, let us pursue their mode, and first inquire how the old law stood, what was the mischief, and what the remedy the Legislature has applied. What the law was, and what the mischief intended to be remedied, are recited in the act itself. We are not left at large to conjecture or put in difficulty to collect from the remedy what was the disease; but the Legislature themselves, in an act, the title of which is to make "further provision for the widows of intestates," recites in the preamble, "that it is in the power of administrators to dispose of the whole of the crop and provisions of the deceased, and thereby deprive the widow of the means of subsistence for herself and family." To remedy which mischief they declare "that whenever any person shall die intestate, the (305) widow may petition and she shall be entitled to a year's support."
By the act of 1784 it is declared that if any person shall die intestate, or make such provision by will as shall not be satisfactory to the wife, upon signifying her dissent she shall be endowed of a third part of the lands and a child's part of the personal estate — placing the widow dissenting precisely in the same situation as if no will had been made.
In the present case the widow dissented, and on her petition for the year's support, in virtue of the act of 1796, she is told, You are not within the meaning of that act, because your husband made a will, and the act only relates to the widows of those who died intestate.
Now, it is very clear that the mischief which the Legislature intended to remedy was the inadequacy of the provision allowed by law, and that the petitioner's case is precisely such a one; that is to say, she is a widow who has received only what the law has provided for her, petitioning in virtue of the act of 1796, which act declares that its design is to make such widows a further provision. If her case, then, comes within the mischief intended to be remedied, it would seem that inasmuch as it was themischief the Legislature was aiming at, that she ought, by an equitable construction, to receive its benefit. The statute de bonis asportatis only enabled the executor to sue; yet, for the sake of reaching the mischief, it was extended, by construction, to an *Page 236 
administrator. But let us examine if this difficulty in reconciling this case with the words of the act of 1796 cannot be gotten over; for if it can be shown that the husband die intestate, the petitioner will then be within both the design and words of the act — and this, to me, has not half the difficulty as making an executor mean administrator, a rent issuing out of land mean the land itself, or a dissolution of marriage by death a dissolution by divorce; all of which have been done.
When a wife dissents to the provision made by a husband in his will, he thereby, as to her, dies intestate, in the same manner as he (306) would do in case of a lapsed legacy not otherwise guarded, or as to real estate in case of a will with one witness; and whether as to the rest of the world the husband died testate or intestate is of no importance in the present inquiry. It can only be material when a petitioner has been already provided for, and then only to prevent, as it were, a double portion — one from the bounty and duty of the husband, the other which the law has provided for those who have no other resource.
If the act is to receive this nice construction, what should we do with a case where a husband, possessed of a large estate, made no other will than barely to appoint executors, who should refuse to qualify, and the widow should petition for her year's support? I can hardly suppose her petition would be rejected. And how does the present case differ from that in principle? The petitioner has received nothing from the bounty of the husband; he either omitted her entirely in the will or made such provision as she chose not to rely on, and has applied to the law. She has no other subsistence for herself or family than that which the law has allowed her, and this she may be kept out of for two years by the executor; and as to the personal estate, that even may be swept away by creditors; and she is, in the meantime, either to beg or starve. Such a construction, therefore, seems to me at variance both with the letter and spirit of the act.
If it be asked, What is the situation of a widow who does not dissent, where the debts against the estate are sufficient to swallow up the assets? I answer, she acts with her eyes open. She may rely, if she chooses, upon the provision made by the husband; and if she is doubtful of that, she ought to dissent, and rely upon the law. The maintenance allotted her is exempted from the demands of creditors and claimants.
It is to me matter of regret that any case should arise in the determination of which a difference of opinion should prevail; and greatly as I at all times respect the opinions of my brethren, when in opposition to my own, I cannot from mere respect, without conviction, (307) subscribe to a construction in my understanding so much *Page 237 
at variance with the true meaning of the act. A majority being of a different opinion, there must, however, be judgment that the petition be dismissed.
NOTE. — Widows who dissent from their husband's will are now entitled under the act of 1827 (1 Rev. Stat., ch. 121, sec. 22). SeePettijohn v. Beasley, 18 N.C. 254.